UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEON JOYCE,<br><br>    Plaintiff,<br><br>v.<br><br>KELLY SANTORO, et al.,<br><br>    Defendants. | Case No.: 1:20-cv-01253-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 46) |

Plaintiff Steven Leon Joyce is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion motion for summary judgment, filed December 17, 2021.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding Defendants Lozano, Garcia, Dodson, Valdez, Felix, A. Flores, Chanelo, and Tapia for retaliation, and separate excessive force claims against Defendants J. Florez and Tapia.

Defendants filed an answer to the complaint on July 1, 2021.

The Court issued the discovery and scheduling order on September 17, 2021.

///

1

As previously stated, on December 17, 2021, Defendants filed a motion for summary judgment on the ground of failure to exhaust the administrative remedies.[1] Plaintiff filed an opposition on February 22, 2022,[2] and Defendants filed a reply on March 4, 2022.

## II.

## LEGAL STANDARD

### A.   Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the

---

[1] Defendants J. Florez and D. Tapia do not move for summary judgment for failure to exhaust the administrative remedies.

[2] Contrary to Defendants' contention, Plaintiff's opposition is signed under penalty of perjury and will be considered in ruling on the instant motion. (See ECF No. 49 at 26, 38, 154.)

plaintiff, shows he failed to exhaust.  Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

In arriving at this Findings and Recommendation, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence

it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).[3]

///

///

///

---

[3] Effective June 1, 2020, the new rules are set out in Cal. Code Regs. tit. 15, §§ 3480–3486. For purposes of these Findings and Recommendations, all citations refer to the 2018-2019 version of the regulations which were effective at the time relevant to Plaintiff's claims.

4

**B. Summary of Plaintiff's Allegations[4]**

From 2018 to 2019, Plaintiff resided at North Kern State Prison where the alleged incidents took place. Plaintiff contends that Defendants, a group of correctional officers assigned to Facility A, engaged in a pattern of retaliatory activities. More specifically, in March 2018, Plaintiff encountered Defendants A. Flores, Garcia, and Dodson outside of Facility A's chow hall. Plaintiff observed the officers inciting another inmate, and Plaintiff asked the inmate if he was okay. In response, the officers instructed Plaintiff to "keep moving." After Plaintiff left the chow hail, the officers smirked at him and Flores stated, "you can live here peacefully or you can live here with a target on your back."

Thereafter, Plaintiff became the subject of retaliatory incidents. On May 29, 2018, Plaintiff was involved in an incident on Facility A-yard after which Defendants Dodson and Garcia escorted him to a holding cage. While he was in the holding cage, Dodson and Garcia searched Plaintiff's cell and trashed his personal property.

In August 2018, officer Lozano strip-searched Plaintiff and a group of inmates. Officer Lozano threatened all the inmates that he stripped searched not to complain about the search. Plaintiff was a part of a group all which challenged the legality of the strip search.

In October 2018, officer Lozano searched Plaintiff's cell on two separate days in retaliation for Plaintiff's involvement in the group appeal.

On May 29, 2019, officer Valdez retaliated against Plaintiff by issuing two false rules-violation reports on the same day. Plaintiff informed officer Baez that he had safety concerns and needed to be transferred off Facility A. Officers later transported Plaintiff to a holding cage, where officers Felix and Florez told him "special orders from Captain Chanelo. You're going back to five block." Plaintiff understood this to mean it was out of retaliation by Captain Chanelo. Officer J. Florez directed Plaintiff to submit to handcuffs, and when Plaintiff provided his hands officer Florez squeezed his hands, causing the bones to pop.

///

---

[4] The Court only summarizes the factual allegations as relevant to the Defendants who are moving for summary judgment for failure to exhaust the administrative remedies.

5

**C.     Statement of Undisputed Facts[5,6]**

1.     Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff alleges that officers Chanelo, Lozano, Valdez, A. Florez, Dodson, Garcia, and Felix retaliated against him from 2018 to 2019.  (Pl.'s Compl., ECF No. 1.)

2.     CDCR has an inmate appeals process, and in accordance with California Code of Regulations, title 15, § 3084.1, inmates can appeal for review of any departmental policy, decision, action, or condition that has a material or adverse effect on their welfare.  (Declaration of Magallanes (Magallanes Decl.) ¶ 3.)

3.     The inmate appeals process in place at the time of Plaintiff's allegations required inmates to exhaust three levels of review before a grievance was considered exhausted.  (Id. ¶¶ 3-4.)

4.     All lower levels of review were subject to modification at the third level of review.  (Id. ¶ 3.)

5.     Title 15, § 3084.2(a) required inmates to use the CDCR Form 602 to describe the specific issues under appeal and the relief requested.  Section 3084.2(b)(3) and (4) required inmates to state all known facts regarding the issue being appealed and to list all staff members involved and describe their involvement in the issue being appealed.  (Id.)

6.     Administrative remedies were not considered exhausted relative to any new issues, information, or person later named by the inmate that was not included in the originally submitted CDCR Form 602 and exhausted through all required levels of review.  (Id.)

7.     Grievances were rejected for any reasons outlined in California Code of Regulations, title 15, § 3084.6(b).  (Id. ¶ 5.)

8.     If CDCR staff rejected an appeal for any reason listed in § 3084.6(b), the Appeals Coordinator had to provide clear and sufficient instructions to the inmate telling them what they must do to qualify the appeal for processing.  (Id.)

---

[5] Hereinafter referred to as "UF."

[6] Plaintiff seeks to add additional information or simply disagree with several of the undisputed facts presented by Defendants which is improper and does not establish the fact is undisputed.

9. A grievance that was rejected in accordance with § 3084.6(b) could later be accepted if the inmate corrects the reason for rejection and resubmits the grievance within thirty calendar days of the rejection. (Id.)

10. Grievances could be rejected because the appeal makes a general allegation, but fails to state facts or specify an act or decision consistent with the allegations. (Id.)

11. Grievances could also be rejected if it is missing necessary supporting documentation. (Id.)

12. Grievances could also be rejected if it involved multiple issues that do not derive from a single event or are not directly related and cannot be addressed in a single response due to this fact. (Id.)

13. Grievances could be rejected if the appeal issue or complaint emphasis has been changed at some point in the process to the extent that the issue is entirely new and the required lower levels of review and assessment have thereby been circumvented. (Id.)

14. Grievances could be cancelled, and under § 3084.1(b) a cancelled appeal does not exhaust administrative remedies. (Id. ¶ 6.)

15. All grievances logged and processed by North Kern State Prison's Inmate Appeals Office are recorded on the Inmate Appeals Tracking System (IATS). (Id. at ¶ 7.)

16. On May 31, 2018, North Kern's Inmate Appeals Office received a grievance logged and processed NKSP-A-18-2054. (Id. ¶ 7(b).)

17. In NKSP-A-18-2054, Plaintiff alleged officer Garcia, Flores, Dodson, and other unidentified officers acted unprofessionally when they escorted him to a holding cage after an incident occurred on May 29, 2018. (Id.)

18. Plaintiff alleged that officer A. Flores tried to have him sign a falsified CDCR Form 128-B counseling only chrono. (Id.)

19. Plaintiff's grievance requested a full investigation, no further retaliation, a copy of the cell search receipt, and for the search and escort officers to be trained, and for his federal court case documents to be returned to him. (Id.)

20. On June 30, 2018, the institution informed Plaintiff that its investigators found no evidence of staff misconduct. The institution also informed him that he needed to submit his grievance to the third level of administrative review for his grievance to be considered exhausted. The institution also informed him that he needed to submit his grievance to the third level of administrative review for his grievance to be considered exhausted. The institution also informed Plaintiff that allegations of staff misconduct "do not limit or restrict the availability of further relief via the inmate appeals process." (Id.)

21. At the third level the Secretary could have modified the second level's determination that no staff misconduct occurred. (Id.)

22. There is no record of Plaintiff submitting NKSP-18-2054 to the third level of review. (Id.)

23. On June 19, 2018, the Inmate Appeal Office processed grievance log number NKSP-A-18-02389. (Id. ¶ 7(c).)

24. In NDSP-A-18-02389, Plaintiff alleged that officer Garcia searched his cell and destroyed his personal property. (Id.)

25. On June 29, 2018, the Inmate Appeals Office processed grievance log number NKSP-A-18-02588. (Id. ¶ 7(d).)

26. In NKSP-A-18-02588, Plaintiff alleged that officer Valencia falsified a May 29, 2018 rules-violation report for fighting. (Id.)

27. Plaintiff also alleged that there was a core group of officers "retaliating against inmate to prevent them from exercising their First Amendment rights. (Id.)

28. Plaintiff included officers Dodson and Garcia in that group of officers who retaliate against inmates. (Id.)

29. The Hiring Authority sent Plaintiff a letter about NKSP-A-18-02588 that instructed him to "please document how and when you were retaliated against by these officers." (Id.)

30. Plaintiff responded "Dodson and Garcia searched my cell and destroyed my personal property on May 29, 2018 in retaliation for me being involved in the alleged incident on May 29, 2018. (Id.)

1    31.    The second level of review included an interview with Plaintiff, and for the first time in
2  the process, Plaintiff alleged that he witnesses officer Dodson attempt to incite an African American
3  inmate, and when Plaintiff intervened, Dodson ordered Plaintiff to keep walking.  (Id.)

4    32.    On July 9, 2018, the Inmate Appeals Office received another grievance that was logged
5  and processed under number NKSP-A-18-2649; however, this grievance was cancelled because it was
6  beyond the 30-day time limit for grievances and it duplicated issues previously raised in NKSP-A-18-
7  02588 and NKSP-A-02389.  (Id. ¶ 7(e).)

8    33.    On May 23, 2019, the Inmate Appeals Office logged and processed grievance number
9  NKSP-19-01927.  (Id. ¶ 7(k).)

10   34.    Plaintiff also took part in a group appeal alleging that officer Lozano conducted a strip
11 search on August 1, 2018.  That appeal was logged and processed as NKSP-A-18-3103.  (Id. ¶ 7(p).)

12   35.    There is no record of NKSP-A-18-3103 being exhausted at the second or third levels of
13 review.  (Id.)

14   36.    There is also no record of Plaintiff alleging that officer Lozano thrashed his cell in
15 retaliation for his participation in NKSP-A-18-3103.  (Id.)

16   37.    Plaintiff submitted NKSP-X-19-3401, which challenged the rejection of his grievance
17 against officer Valdez.  (Id. ¶ 7(q).)

18   38.    Plaintiff's grievance against officer Valdez was rejected because Plaintiff combined
19 multiple rules-violation reports in one grievance.  (Id.)

20   39.    The Appeals Coordinator determined that the two rules violation reports Plaintiff
21 alleged in his grievance against officer Valdez were not directed related, and on September 12, 2019,
22 the Appeals Coordinator sent him a letter about the rejection and instructed him to resubmit two
23 separate appeals about each rules-violation report.  (Id.)

24   40.    NKSP-A-18-02389 was logged and processed by the Office of Appeals (OOA) as third
25 level review (TLR) 18180891 on July 31, 2018. (Moseley Decl. ¶ 8(a).)

26   41.    OOA processed TLR 18110905 on July 31, 2018, which was an appeal of NKSP-A-18-
27 02588.  (Id. ¶ 8(b).)

28   42.    OOA processed TLR Log No. 1908884 on July 25, 2019.  (Id. ¶ 8(g).)

43. TLR Log No. 190884 was an appeal of NKSP-19-1927.  (Id.)

44. In TLR Log No. 1908884, Plaintiff appealed a grievance about officer J. Florez's alleged use of excessive force.  (Id.)

45. OOA processed TLR Log No. 2004913 on April 20, 2020, and that appeal was an appeal of NKSP-X-19-04972.  (Moseley Decl. ¶ 8(j).)

46. The TLR Log No. 2004913 sought to reinstate a rejected grievance that alleged how officer Valdez falsified two separate RVRs from May 19, 2019.  (Id.)

47. It was determined that the grievance combined multiple issues in violation of Title 15, § 3084.6(b)(8), which prohibits a single appeal grieving multiple issues.  (Moseley Decl. ¶ 8(j).)

48. Despite receiving instructions about how to re-submit his grievances, Plaintiff did not re-submit the grievance as separate grievances.  (Moseley Decl. ¶ 8(j).)

49. There is no third level review addressing Plaintiff's grievance against officer Valdez. (Id.)

50. Plaintiff identified NKSP-A-18-2389 as the grievance that exhausted his claim that Defendant Garcia retaliated against him by searching his cell and destroying his property.  (Pl.'s Resp to Def. Garcia's First Set of Interrogs. Nos. 1-2.)

51. Plaintiff identified NKSP-A-2389 and NKSP-A-2588 as the grievances that exhausted his claim that Defendant Dodson retaliated against him by searching cell and destroying his property. (Pl.'s Resp. to Def. Dodgson's First Set of Interrogs. Nos. 7-8.)

52. Plaintiff identified NKSP-A-18-2054 and NKSP-18-3029 as the grievances that exhausted his claim against Lt. A. Flores.  (Pl.'s Resp. to Def. A Flores's First Set of Interrogs. Nos. 1-2.)

53. NKSP-18-3029 only challenges the cancellation of a duplicative grievance; it does not address the merits of any allegation.  (Moseley Decl. ¶ 8(c).)

54. Plaintiff identified NKSP-X-19-04972 and NKSP-X-19-3401 as the grievances that exhausted his claims against officer Valdez.  (Pl.'s Resp. to Def. Valdez's First Set of Interrogs. Nos. 1-2.)

55. Plaintiff identified NKSP-19-01927 as the grievance that exhausted his claims against Defendant Felix.  (Pl.'s Resp. to Def. Felix's First Set of Interrogs. Nos. 1-2.)

56. Plaintiff identified NKSP-19-01927 and NKSP-19-02020 as the grievances that exhausted his claims against Defendant Chanelo.  (Pl.'s Resp. to Def. Chanelo's First Set of Interrogs. Nos. 1-2.)

57. NKSP-19-02020 was cancelled because it was determined that it duplicated issues under review in 19-01927.  (Magallanes Decl. ¶ 7(m), Ex. 15.)

58. Plaintiff claims that officer Lozano threatened to destroy inmates' cells if they appealed allegations that he strip searched them.  (Pl.'s Resp. to Def. Lozano's First Set of Interrogs. No. 3.)

**D.    Analysis of Defendants' Motion**

Defendants argue that NKSP had a readily available process for filing administrative grievances, and the undisputed facts demonstrate that Plaintiff failed to exhaust his administrative remedies for his retaliation claims against Defendants Chanelo, Lozano, Dodson, Garcia. A. Flores, and Valdez.

It is undisputed that Plaintiff filed several inmate grievances during the relevant time frame. The Court will address each of the relevant grievances in relation to his retaliation claims below.

1.    <u>Retaliation Claim Against Defendants Dodson and Garcia</u>

**a.    NKSP-A-18-2389**

It is undisputed that Plaintiff identified NKSP-A-18-2389 as the grievance that exhausted his claim that Defendant Garcia retaliated against him by searching his cell and destroying his property. (UF 50.)  It is also undisputed that Plaintiff identified NKSP-A-2389 and NKSP-A-2588 as the grievances that exhausted his claim that Defendant Dodson retaliated against him by searching cell and destroying his property.  (UF 51.)

In NKSP-A-18-2389, Plaintiff alleged that Defendant officer E. Garcia searched his cell and destroyed some of his personal property.  (Magallanes Decl., Ex. 5.)  Indeed, Plaintiff requested that the he be provide replacement items which were destroyed by Garcia.  (<u>Id.</u>)  There is no allegations that Defendant Garcia searched his cell and destroyed his personal property in retaliation for Plaintiff's

11

1 protected conduct. Further, the grievance makes no mention of Defendant Dodson's alleged involvement in the cell search. (Id.)

In addition, NKSP-A-18-2389, did not provide sufficient facts from which a prison official would understand that Plaintiff engaged in some for of protected conduct before Defendants Dodson and Garcia searched his cell and destroyed his property, that Defendants Dodson and Garcia were aware Plaintiff engaged in protected conduct; or that Defendants Dodson and Garcia searched his cell and destroyed his property in retaliation for that protected conduct. Accordingly, NKSP-A-18-2389 does not exhaust Plaintiff's claims against any of the Defendants.

In his opposition, Plaintiff contends in the action requested portion of this appeal, he requested that "no further retaliation be taken." (Pl.'s Opp'n at 20, ECF No. 49.) However, this vague request does not put prison officials on notice that Plaintiff engaged in protected conduct before officers Garcia and Dodson searched his cell, that officers Garcia and Dodson knew about Plaintiff's protected conduct, and intended to chill his freedom of speech rights. Rather, the nature of Plaintiff's grievance involved the destruction of property, not misconduct taken in retaliation for the exercise of Plaintiff's rights under the First Amendment. Plaintiff's vague request that no further retaliation take place does not create a material dispute of fact that Plaintiff placed prison officials on notice of his retaliation claims against officers Dodson and Garcia.

      **b.**    **NKSP-A-18-2588**

Defendants argue that NKSP-A-18-2588 and the third level review failed to exhaust the administrative remedies for the retaliation claims against Defendants Dodson and Garcia. In NKSP-A-18-2588, Plaintiff alleged that on May 29, 2018, a rules violation report was falsified in retaliation by officer non-party Valencia. (Magallanes Decl. Ex. 6.) Plaintiff also asserted "it[']s a core of officers who retaliate … to prevent inmates from exercising their 1st Amendment rights to grieve as well as the right to grieve as protected by C.C.R. § 3084.1(d). The core of officers who have been known to retaliate is C/O U. Valencia, E. Dodson, G. Correa, C. Valencia, E. Garcia." This appeal was bypassed at the first level of review, and at the second level review an interview into Plaintiff's allegations was conducted by correctional counselor B. Johnson.

The Court finds that this grievance is sufficient to grieve the retaliation claim against Defendants Dodson and Garcia as the prison officials were clearly aware of the alleged misconduct as provided by Plaintiff during the interview and the appeal was not rejected as procedurally deficient for failure to provide sufficient factual information. (Magallanes Decl. Ex. 6; Moseley Decl. Ex. 3.) Indeed, during the interview, Plaintiff was specifically asked if he had any additional statements to add to his appeal and he reiterated that he wis retaliated by staff identified in section A of the appeal. Although the third level review noted that Plaintiff added new issues and requests to the appeal, the Court cannot determine what new issue or requests were added at the third level of review, and the fact that Plaintiff grieved allegations of retaliation against Defendants Dodson and Garcia was specifically mentioned in the original appeal at the first level of review.  Accordingly, this appeal is sufficient to grieve the retaliation claims against Defendants Dodson and Garcia.  By explaining the alleged retaliatory conduct by Defendants officer Dodson and Garcia during the second level interview, as requested by correctional counselor B. Johnson, the appeal sufficed to place the prison on notice of the retaliation claims against these Defendants.

2.     Retaliation Claim Against Defendant A. Flores

Plaintiff identified NKSP-A-18-2054 and NKSP-18-3029 as the grievances that exhausted his claim against lieutenant A. Flores. (UF 52.)

In NKSP-A-18-2054, Plaintiff alleged that on May 29, 2018, officer E. Garcia became volatile toward him after he refused to sign a CDCR 128-B chrono. It was alleged that officer Garcia snatched the CDCR 128-B from Plaintiff's hands as he attempted to reach the chrono and then made the following statement: "I'm putting your black ass back in the cage." Lieutenant Flores then approached Plaintiff and threatened to place him in administrative segregation for safety concerns if Plaintiff did not sign the chrono. (Magallanes Decl. Ex. 4.) There is no allegation in this appeal that lieutenant Flores retaliated against Plaintiff. Although the appeal was "partially granted" inasmuch as an appeal inquiry was conducted, but it was determined (contrary to Plaintiff's contention) that staff did not violate CDCR policy with respect to the issues raised. (Id.) In addition, despite the fact that Plaintiff did not receive all the relief requested and advisement that the appeal was not exhausted until a decision by the third level review was rendered, Plaintiff did not appeal to the third level of review.

13

(UF 22.)  Indeed, the third level review could have issued a modification order.  (Magallanes Decl. ¶ 7(b).)  Accordingly, this appeal did not grieve the retaliation claim against A. Flores.

In NKSP-18-3209 (Appeal Log No. 1813445), Plaintiff only challenges the cancellation of a duplicative grievance; it does not address the merits of any allegation.  (UF 53.)  Plaintiff alleged that NKSP-18-02649 was not duplicative to NKSP-18-02054 and NKSP-18-2389, and the grievance was improperly cancelled.  In NKSP-18-02649, Plaintiff claimed that on May 29, 2018, he was falsely accused of fighting and was missing personal property items based on his assigned cell being searched.  (Moseley Decl. Ex. 4.)  The third level of review denied the appeal, stating, in pertinent part as follows:

> A review of Inmate Appeals Tracking System (IATS) noted the Appeals Office received appeal Log# NKSP-18-02649 on July 13, 2018, and the appeal was cancelled as being a duplicate.  The SLR noted the appellant submitted appeal Log# NKSP-18-02054 which was categorized as a Staff Complaint.  Within the appeal, the appellant noted the circumstances which led to him receiving a CDC Form 115, Rules Violation Report (RVR) dated May 29,2 018 for Fighting.  This appeal was completed and returned to the appellant on July 11, 2018, with a SLR Staff Complaint response.  The IATS noted on June 19, 2018, the appellant submitted appeal Log# NKSP-18-02389 where he noted he was missing personal property items based on his assigned cell being search[ed] on May 29, 2018.  This appeal was completed and returned to the appellant on July 10, 2018, at the First Level of Review (FLR).  On July 13, 2018, the Appeals Office received appeal Log# NKSP-18-02389 where the appellant stated he was dissatisfied with the FLR.  The SLR was completed and returned to the appellant on July 18, 2018, with a Second Level response.  The SLR noted the appellant submitted appeal Log#-18-02588 on July 18, 2018, where he noted his RVR dated May 29, 2019, was falsified in retaliation.  An SLR response was conducted and the appeal was returned to the appellant on July 25, 2018.  The SLR noted that appeal Log# NKSP-18-02649 was retarding issue related to the allegations of his May 29, 2018, RVR being falsified.  The appellant also noted his assigned cell being searched and staff leaving his assigned cell in disarray on May 29, 2018.  The SLR noted the appellant brought forth several issues related to the incidents that occurred on May 29, 2018, in the above mentioned appeals.  Specifically, appeal Log# NKSP-18-02389 addressed the appellant's property concerns and appeal Log# NKSP-18-02588 addressed his claims of being retaliated against by Correctional Officer (CO) Garcia and CO Dodson, along with several other staff.  Therefore, the cancellation of appeal Log# NKSP-18-02649 was appropriate as it was duplicate to several other appeals filed.

(Moseley Decl. Ex. 4.)

Based on the determination issued by the third level of review, this appeal was properly cancelled pursuant to California Code of Regulations, title 15, section 3084.6(c).  Thus, it is undisputed that this grievance did not grieve the retaliation claim against Defendant A. Flores.

14

In his opposition, Plaintiff contends that "A. Flores threatened the plaintiff that he would have a 'target' on his 'back' for exercising his grieving rights and reporting any misconduct against his administration staff." (Pl. Opp'n at 5 ¶¶ 4-6, ECF No. 49.) However, in his verified complaint, Plaintiff only alleged that "L.T. Flores also told the Plaintiff 'you can live here peacefully or have a 'target' on your back" and then immediately filed a grievance about lieutenant Flores conduct. (Compl. at 10 ¶¶ 3-7, ECF No. 1.) Notwithstanding the inconsistency, the Court finds that Plaintiff's allegations that he feared retaliation are insufficient to excuse any exhaustion. "[T]he threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies." McBride *v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). For this exception to apply, a plaintiff must establish both (1) that he subjectively "believed prison officials would retaliate against him if he filed a grievance" and (2) that this fear was objectively reasonable. Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 792 (9th Cir. 2018).

The alleged threat by A. Flores fails to meet the McBride standard. Irrespective of the exact content of A. Flores statement, it is clear that the alleged threat by A. Flores did not actually deter Plaintiff from filing a grievance. In his verified complaint, Plaintiff states, under penalty of perjury, that following the statement made by A. Flores Plaintiff filed a grievance to document the incident. (Compl. at 10.) In addition, Plaintiff filed several other grievances during the relevant time frame alleging staff misconduct which further demonstrates that Plaintiff's belief was not objectively reasonable. See, e.g., Gaines v. Beasley, No. 1:15-cv-1533-LJO-JLT, 2018 WL 5270539, at *7 (E.D. Cal. Oct. 22, 2018) (the fact that plaintiff filed several appeals during the relevant period alleging staff misconduct demonstrated the objective standard was not met); see also Williams v. Ortega, No. 18-cv-054-MDD-LAB, 2021 WL 4473171, at *2 (S.D. Cal. Sept. 30, 2021) (concluding fact that inmate-plaintiff filed 18 administrative grievances during relevant time frame did not satisfy McBride's objective prong). Accordingly, Plaintiff's verified complaint makes clear that Plaintiff cannot meet the McBride standard. Therefore, Plaintiff has failed to demonstrate a material dispute of fact based on the alleged threat by A. Flores.

3.  <u>Retaliation Claim Against Defendant Valdez</u>

Plaintiff identified NKSP-X-19-04972 and NKSP-X-19-3401 as the grievances that exhausted his claims against officer Valdez. (UF 54.)

**a.   NKSP-X-19-3401**

It is undisputed that Plaintiff submitted NKSP-X-19-3401, which challenged the rejection of his grievance against officer Valdez. (UF 37.) Plaintiff's grievance against officer Valdez was rejected because Plaintiff combined multiple rules-violation reports in one grievance. (UF 38.) The Appeals Coordinator determined that the two rules violation reports Plaintiff alleged in his grievance against officer Valdez were not directed related, and on September 12, 2019, the Appeals Coordinator sent him a letter about the rejection and instructed him to resubmit two separate appeals about each rules-violation report. (UF 39.)

A decision to reject an inmate grievance can render administrative remedies unavailable only if Plaintiff can establish: "1) that he actually filed a grievance or grievance that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim he seeks to pursue in federal court; and 2) prison official screening his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 823-24 (9th Cir. 2010). Neither instance applies here. The applicable regulations allow prison officials to reject a grievance which involves "multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact." Cal. Code Regs., tit. 15, § 3084.6(b)(8). If the grievance is rejected pursuant to § 3084.6(b), the appeals coordinator must provide clear and sufficient instructions regarding any further actions necessary to allow the appeal to proceed. Cal. Code Regs., tit. 15, § 3084.6(a)(1). The appeal may later be accepted if the rejection is properly corrected, and the appeal is returned within the applicable deadline. Cal. Code Regs., tit. 15, § 3084.6(a)(2).

Here, the appeals coordinator determined that although the two rules-violations were issued on the same day, they dealt with separate conduct: one alleged that Plaintiff possessed a contraband cell phone; the second alleged that Plaintiff engaged in behavior that could lead to violence when Plaintiff swore at officer Valdez. (UF 39.) Indeed, each rules-violation involved different disciplinary

16

outcomes, as the violation for contraband was dismissed and Plaintiff was convicted of the violation for behavior that could lead to violence resulting in the loss of ten days' credit. (Magallanes Decl. ¶ 7(q), Exs. 19-20.) Consequently, the appeal was rejected because neither rules violation report was directly related. Furthermore, the rejection did not render Plaintiff's remedies unavailable. Plaintiff was notified of the reason for the rejection and provided clear instructions on how to re-submit the appeal to allow for processing, consistent with § 3084.6(a)(2). (Id.) Plaintiff did not heed the instructions, but instead re-submitted the grievance without making the necessary corrections and requested to reinstate his grievance. (Id.) However, prison officials determined there was no basis to reinstate the grievance. (Id.) Accordingly, the screen out of Plaintiff's grievance was consistent with the applicable regulations, and Plaintiff failed to exhaust the administrative remedies against Defendant Valdez.

Plaintiff's disagreement with the prison's determination that this appeal involved two separate incidents, does not generate a material dispute of fact. Indeed, Plaintiff has presented no admissible evidence that he could not have followed the specific instruction to separate the two issues into two grievances to resubmit both of them. (Magallanes Decl. Ex. 19.)

**b.    NKSP-X-19-04972**

It is undisputed that the OOA processed TLR Log No. 2004913 on April 20, 2020, and that appeal was an appeal of NKSP-X-19-04972. (UF 45.) The TLR Log No. 2004913 sought to reinstate a rejected grievance that alleged how officer Valdez falsified two separate RVRs from May 19, 2019. (UF 46.) It was determined that the grievance combined multiple issues in violation of Title 15, § 3084.6(b)(8), which prohibits a single appeal grieving multiple issues. (UF 47.) Despite receiving instructions about how to re-submit his grievances, Plaintiff did not re-submit the grievance as separate grievances. (UF 48.) There is no third level review addressing Plaintiff's grievance against officer Valdez. (UF 49.) Accordingly, this appeal did not serve to exhaust Plaintiff's claims against Defendant Valdez.

///
///
///

### 4. Retaliation Claim Against Defendants Chanelo and Felix

Plaintiff identified NKSP-19-01927 as the grievance that exhausted his claims against Defendant Felix. (UF 55.) Plaintiff also identified NKSP-19-01927 and NKSP-19-02020 as the grievances that exhausted his claims against Defendant Chanelo. (UF 56.)

#### a. NKSP-19-01927

In NKSP-19-01927, Plaintiff alleged that on May 18, 2019, he made contact with officer Baez and told him he was feeling suicidal and his safety was in danger. Plaintiff was placed in handcuffs and escorted to the A yard. After waiting in the cage, sergeant Felix and officer J. Florez said special orders from Captain Chanelo "you['re] going back to five block." When Florez placed handcuffs on Plaintiff, he used unnecessary force by squeezing Plaintiff's fingers together on his right hand and slammed his right hand against the steel cage slot. Plaintiff was pinned like a wrestler. In the request for relief, Plaintiff sought to have captain P. Chanelo removed of his duties as a captain for deliberately interring with the reporting of staff misconduct by ordering his return back to A yard. (Magallanes Decl. Ex. 13.)

This grievance does not mention Plaintiff's retaliation claims against Defendants Chanelo and Felix; rather, the grievance involves allegations relating to the use of excessive force by officer J. Florez. (Id.) Indeed, the third level response support this finding because it only addressed Plaintiff's use of force claim against officer J. Florez. (Moseley Decl. Ex. 8.) Although Plaintiff mentions Chanelo and Felix in this appeal, there are simply no facts to put the prison on notice that these officers engaged in retaliation for Plaintiff's protected conduct. Accordingly, this grievance did not grieve Plaintiff's retaliation claims against Defendants Chanelo and Felix.

#### b. NKSP-19-02020

NKSP-19-02020 was cancelled because it was determined that it duplicated issues under review in 19-01927. (UF 57.) Indeed, it was determined that this appeal was a duplicate of NKSP-19-01927, as it challenged the use of excessive force by officer J. Florez. (Id.) A cancellation decision under section 3084.6(c) does not exhaust administrative remedies. Cal. Code Regs., tit. 15, § 3084.1(b). Accordingly, NSKP-19-02020 did not exhaust Plaintiff's retaliation claims against Defendants Chanelo and Felix.

### 5. Retaliation Claim Against Defendant Lozano

Plaintiff claims that officer Lozano threatened to destroy inmates' cells if they appealed allegations that he strip searched them. (UF 58.) It is undisputed that Plaintiff also took part in a group appeal alleging that officer Lozano conducted a strip search on August 1, 2018. That appeal was logged and processed as NKSP-A-18-3103. (UF 34.) There is no record of NKSP-A-18-3103 being exhausted at the second or third levels of review. (UF 35.) There is also no record of Plaintiff alleging that officer Lozano thrashed his cell in retaliation for his participation in NKSP-A-18-3103. (UF 36.) Accordingly, Plaintiff failed to exhaust the administrative remedies for his retaliation claim against Defendant Lozano.

In his opposition, Plaintiff contends that during the strip search, officer Lozano threatened to retaliate against inmates for filing grievances. (Pl.'s Opp'n at 24, ECF No. 49.) Plaintiff argues that he suffered for over a year and custody staff, among other things, falsified state documents which resulted in him being assaulted on two separate occasions. (Id.) Plaintiff also contends he did not file a grievance against officer Lozano as it was filed by inmate Styles. (Id.) It is undisputed that Plaintiff was one of the inmate's who participated in a group appeal (NKSP-A-18-3103) complaining about strip search conducted by Lozano on August 1, 2018. (UF 34.) In addition, it is also undisputed that Plaintiff continued to file several other grievances during the relevant time period. (Magallanes Decl. Exs. 2-20.). Plaintiff's alleged belief that he felt threatened by officer Lozano is belied by the record in this case and it is simply not plausible.

## IV.
## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' exhaustion motion for summary judgment be denied as to the retaliation claims against Defendants Dodson and Garcia; and

2. Defendants' exhaustion motion for summary judgment be granted as to the retaliation claims against Defendants Lozano, Valdez, Felix, A. Flores, and Chanelo.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21)**

19

**days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 26, 2022**

UNITED STATES MAGISTRATE JUDGE